IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | 2:08cv1564<br>Electronic Filing |
| INTERNATIONAL GLASS PRODUCTS, LLC, and FRANCISCO A. FERNANDEZ, | ) ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM ORDER</u>**

AND NOW, this 22nd day of May, 2017, upon due consideration of defendant International Glass Products, LLC's ("IGP") Motion to Disqualify Counsel and the parties' submissions in conjunction therewith, IT IS ORDERED that [254] the motion be, and the same hereby is, denied.

The motion presents as little more than a thinly veiled attempt to use the Rules of Professional Conduct to gain a tactical advantage in the litigation. This is clear because the motion fails for at least three reasons.

First, IGP has failed to raise circumstances that meet the requirements for disqualification. Federal courts have inherent powers over the admission and supervision of the attorneys who appear before them. <u>In re Corn Derivatives Antitrust Litigation</u>, 748 F.2d 157, 161 (3d Cir. 1984), <u>cert. denied sub nom.</u>, <u>Cochrane & Bresnahan v. Plaintiff Class Representatives</u>, 472 U.S. 1008 (1985). Within this sphere of authority the "courts have vital

1

interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients. To protect these vital interests, courts have the power to disqualify an attorney from representing a particular client." Id.

"Motions to disqualify are viewed with 'disfavor'' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" Carlyle Towers Condominium Ass's, Inc. v. Crossland Savings, FSB, et al., 944 F. Supp. 341, 345 (D. N.J. 1996) (quoting Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1114 (D. N.J. 1993) (citing Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)). The United States Court of Appeals for the Third Circuit made clear long ago:

> [a court] should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of her choice and enabling attorneys to practice without excessive restrictions.

United States v. Miller, 624 F.2d 1198, 1201 (3d Cir.1980); accord Spear v. Fenkell, 2014 WL 6676660, *1 (E.D. Pa. Nov. 25, 2014) (Motions to disqualify are an extreme sanction, are not to be taken lightly, are to be granted only when it is absolutely necessary and caution must be taken to assure the Professional Rules of Conduct are not utilized as a procedural weapon) (collecting numerous cases).

It has long been recognized that "[t]he attempt by an opposing party to disqualify the other side's lawyer [is] part of the tactics of an adversary proceeding." J.P. Foley & Co., Inc. v. Vanderbilt, 523 F.2d 1357, 1360 (2d Cir.1975) (Gurfein, J., concurring). Given this reality, the court's exercise of discretion must be undertaken with due regard for the ethical standards governing the conduct of counsel and careful consideration of specific situation presented.

Gould, Inc. v. Mitsui Mining and Smelting, Co., 738 F. Supp. 1121, 1126 (N. D. Ohio 1990). The issues "arising from the application of these standards cannot be resolved in a vacuum, and the ethical rules should not be blindly applied without consideration of relative hardships." Id. Consequently, close scrutiny of the facts is required to prevent unjust results. Id. (citing Smith v. Whatcott, 757 F.2d 1098, 1099-1100 (10th Cir. 1985); and Kalmanovitz v. G. Heileman Brewing Co., Inc., 610 F. Supp. 1319, 1322 (D. De. 1985)); accord J.P. Foley & Co., 523 F.2d at 1360 (care must be taken "to prevent literalism from possibly overcoming substantial justice to the parties.").[1]

Here, IGP founds its position on the proposition that the court's rulings stripping HSB of the ability to pursue claims as a direct insurer of IGP creates an inherent conflict in the joint representation of both carriers. This purportedly is so because The Hartford continues to have claims to bargain with in the negotiations concerning settlement of the litigation while HSB does not. IGP posits:

> As a result of the Court's rulings, HSB has no claims against IGP, but IGP's claims against HSB for tortious interference with contract and negligence remain to be decided by the jury. IGP is seeking damages against HSB for destruction of its business, valued at approximately $15,000,000 by IGP's expert witness, as well as punitive damages. Because of the Court's rulings, which are now the law of the case, HSB can no longer argue that the settlement value of those claims must be balanced against the settlement value of HSB's claims against IGP, because HSB has no such claims against IGP.
>
> On the other hand, the Court has held that both IGP's claim of breach of contract against Hartford, and Hartford's claim of breach of contract against IGP, would need to be decided by the jury, along with the other claims between IGP and Hartford. Thus, Hartford has the ability to argue that the settlement value of its claims against IGP must be taken into account when considering the settlement value of IGP's claims against Hartford. Simply stated, Hartford has something to bargain with, and HSB does not. It is obvious

---

[1] "Courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just as likely—encouragement of vexatious tactics, which increase public cynicism about the administration of justice." Gould, 738 F. Supp. at 1124-25 (quoting Panduit v. All States Plastic Mfg. Co., 744 F.2d 1564, 1576-77 (Fed. Cir. 1984)).

3

that a conflict of interest exists because there are substantially different possibilities of
settlement for Hartford as compared with HSB.

IGP's Memorandum in Support (Doc. No. 255) at 9.

In addition, this perceived conflict supposedly is exacerbated by the potential to recover punitive damages on a finding of bad faith insurance practices, which further inhibits plaintiffs' counsel's ability to carry out Rule 1.7's duty of loyal and diligent representation to each carrier.[2]

IGP explains:

> In assessing the risk of such an award of punitive damages, Harford's counsel must assume that the financial exposure belongs to Hartford alone, because of Pennsylvania's strong public policy against insurability of punitive damages. Wolfe v. Allstate Prop. &Cas. Ins.

---

[2] Pennsylvania Rule of Professional Conduct 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

> (2) the representation is not prohibited by law;

> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

> (4) each client gives informed consent.

204 Pa. Code Rule 1.7.

4

Co., 790 F.3d 487. 495 (3d Cir. 2015). Counsel's ethical duties to Hartford require that attorney to seek every opportunity to resolve the claims between IGP and Hartford on the best terms for Hartford. In those negotiations, Hartford has the ability to argue that its triable claims against IGP make its liability exposure different from that of HSB. But joint counsel cannot make that argument without violating his duties of loyalty and impartiality to HSB. Put more directly, counsel's ethical duties to Hartford for "loyal and diligent representation" require that attorney to use the negotiation leverage that Hartford – and only Hartford—possesses to seek a settlement for the benefit of Hartford, regardless of its effects on HSB. So by definition, the interests of Hartford and HSB "cannot be reconciled." Rule 1.7, Explanatory Comment [29]. As that Explanatory Comment goes on to say, "because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely the impartiality can be maintained.

Id. at 10.

Assertedly, these identified "divergent" interests combine to inhibit present counsel's ability to advise the carriers about their respective exposures in the litigation and the approaches for settlement of each plaintiff's potential liability independently. The inability to do so has forced upon IGP the sole option of settling with both plaintiffs or not at all. IGP posits that this dilemma has in turn become a concern of the court because "the joint representation is impeding the ability of the parties to settle the litigation." Id. at 13. In short, the dual representation of plaintiffs is impeding IGP's ability to "exercise its 'fundamental right ' to negotiate a resolution on its insurance claim (and Hartford's competing claims) exclusively with Hartford [and] the ethical dilemmas created by the joint representation limit the full range of options available to settle the case or to simplify the issues for trial." Id.

The Rules of Professional Conduct are not designed to protect IGP's interest in attempting to broker a separate settlement with each plaintiff. Indeed, such an interest is not even within the scope of the Court's inherent authority to regulate the conduct of the attorneys who appear before it. And assuming that IGP has a basic right to explore an agreed upon

5

resolution of the claims comprising all or a part of the entire case, any such right is juxtaposed to plaintiffs' equal right to approach any negotiation on proposals and terms acceptable to them.

Tellingly, IGP fails to cite a single case that recognizes the "fundamental" right upon which its motion is predicated, let alone one that acknowledges the need to protect that right through enforcement of the Rules of Professional Conduct. And to the extent the "fundamental" right IGP identifies emanates from its contractual rights under the policy and the concomitant statutory protections afforded to those rights, such rights and interests adequately are protected through the panoply of options IGP possesses in conjunction with its ability to pursue to final judgment its remaining causes of action against plaintiffs.

In contrast, plaintiffs have a well-recognized right to counsel of their choice. Their "choice of counsel is entitled to substantial deference." Hamilton v. Merrill Lynch, 645 F. Supp. 60, 61 (E.D. Pa. 1986). Plaintiffs must be given significant latitude in choosing the advocate who will represent their claims and this court should not lightly disturb the trust and confidence they have placed in their chosen counsel. Id.

It follows that the parties' ability or inability to reach a consensual settlement is not a premise which provides a foundation for a finding of a conflict necessitating disqualification. Displacement of counsel at this late stage would deprive plaintiffs of their counsel of choice without a sound basis for doing so. Such a measure would be costly, disruptive, create substantial delay and place plaintiffs at a great disadvantage. At the very least, IGP has failed to show that disqualification is "absolutely necessary" under the circumstances and is an "appropriate means of enforcing the applicable disciplinary rule" in any event.

Moreover, even assuming there is a basis for pursuing a motion for disqualification, IGP has waived its right to do so. "Waiver is a valid basis for the denial of a motion to disqualify."

In re Rite Aid Corp. Securities Litigation, 139 F. Supp.2d 649, 660 (E.D. Pa. 2001) (quoting Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1208 (E.D. Pa. 1992)). Relevant factors to be considered in this context include the length of the delay in bringing the motion, when the movant first learned of the conflict, whether the movant was represented by counsel during the period of time that elapsed, why any delay occurred, and whether disqualification would result in prejudice to the nonmoving party. Id. (citing Graphix Hot Line, 808 F. Supp. at 1208).

Here, the potential grounds for the existence and/or the development of a conflict under Rule 1.7 were readily apparent upon review of the pleadings as they existed after IGP filed its counterclaims on May 21, 2012. IGP's underlying theory — that The Hartford breached contractual and statutory duties by delegating control over the claims adjustment process to Hartford Steam Boiler — clearly had been formulated by IGP at that point in time. The court's summary judgment rulings added nothing to this understanding beyond the proposition that certain of IGP's claims predicated on this theory survived plaintiffs' legal challenge and presented material issues of fact for trial. During this time IGP was represented by very competent counsel who had been in the case since its inception. IGP has offered nothing beyond its dissatisfaction with the parties' settlement negotiations to explain its delay in bringing the matter to the court's consideration. Waiting for over four years to file a disqualification motion waived the right to do so.

Even assuming the court's ruling somehow provided IGP with additional insight separate from a basis for strategic legal maneuvering, IGP waited until eight weeks prior to the first scheduled trial date to file its motion to disqualify. Courts within this jurisdiction consistently have recognized that any meaningful delay between the understanding of the substance of the

7

basis to disqualify and the filing of a motion to do so raises the specter of tactical use and provides a proper basis for a finding of waiver. See, e.g., Spear v. Fenkell, 2014 WL 6676660 at *1-2 (delay of several months between the revelation of the factual predicates underlying a motion to disqualify and the filing of the motion provided strong support for denying it); In re Rite Aid Corporation Securities Litigation, 139 F. Supp.2d at 660–61 (nine month delay in warranted a finding of waiver); Com. Ins. v. Graphix Hot Line, 808 F. Supp. at 1209 (filing the motion two years after the factual predicates underlying the motion were brought to life by the operative pleadings warranted a finding of waiver). Other courts likewise have found waiver under similar circumstances. See, e.g., Trust Corp. of Montana v. Piper Aircraft Corp., 701 F.2d 85 (9th Cir. 1983) (motion to disqualify defendant's counsel brought about one month before trial date and more than two years after complaint filed properly deemed to have been waived); Central Milk Producers Cooperative v. Sentry Food Stores, Inc., 573 F.2d 988 (8th Cir.1978) (motion to disqualify made more than two years after former client hired counsel to raise conflict issue denied); Zimmerman v. Duggan, 81 B.R. 296 (E.D. Pa. 1987) (motion to disqualify brought nearly three years after conflict issue raised in court denied). We have no difficulty doing the same under the circumstances presented. Accordingly, IGP waived the ability to pursue relief in the form of disqualification.

Finally, plaintiffs have consented to the joint representation after disclosure of the potential conflicts raised by IGP and waived any conflict under Rule 1.7(b). In some circumstances Rule 1.7 permits the waiver of a potential conflict of interest where each affected party gives informed consent. Rule 1.7(b); Jackson v. Rohm & Haas, 2008 WL 3930510, *3 (E.D. Pa., August 26, 2008) (citing Graphix Hot Line, 808 F. Supp. at 120 and Hesling v. Avon Grove School Dist., 2007 WL 1030096, *3 (E.D. Pa., March 30, 2007)).

Rule 1.7 contemplates two levels of conflict – disqualifying conflicts and those where joint representation is permitted. Jackson, 2008 WL 3930510 at *3. Certain conflicts are so irreconcilable that a client cannot waive them. In that situation disqualification is proper notwithstanding valid consent by the client. Id. The reasonableness of counsel's belief that simultaneous representation can be accomplished without significant adverse consequences and the potential for and degree of conflict that could "materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably would be pursued on behalf of the client" are pertinent areas of inquiry. Id. Consideration also is to be given to "whether the client wishes to accommodate the other interest[s] involved." Id.

Here, the identified potential for conflict is not disqualifying *per se*. Both plaintiffs uniformly have taken the position that IGP committed fraud in attempting to substantiate its insurance losses and neither is liable to IGP on the counterclaims it has advanced. Plaintiffs have pursued this approach initially and persistently throughout the litigation. They are sophisticated commercial entities that have substantial experience in insurance matters. It is within their prerogative to pursue a unified approach against IGP and forego claims against each other in reaction to IGP's counterclaims. Cf. Hamilton, 645 F. Supp. at 61-62 (purchasers of securities in drilling operations where entitled to join forces and through joint representation pursue claims based on their substantial common interests even where doing so meant foregoing less attractive cross-claims against each other based on the same loss). Opting to pursue this unified and aligned approach must be accorded appropriate deference.

Moreover, the record sufficiently confirms that each plaintiff is familiar with the pleadings, motions and rulings in the case. Each has reviewed the same through their respective

legal departments both before and in conjunction with IGP's motion to disqualify. After consideration of the potential benefits, conflicts and risks of pursuing their chosen litigation strategy through joint representation, plaintiffs have made an informed decision to waive any conflict and continue with counsel's representation.

Finally, counsel firmly believes that any risk from the potential for conflicts from a situation of divided loyalty is at best minimal and joint representation is permissible under Rule 1.7(b). After consideration of the matters raised by IGP, the law firm of DiBella, Geer, McAllister & Best has formed a reasonable belief that can continue with the joint representation without encountering a disqualifying conflict under Rule 1.7(a). That belief is entitled to some weight.

The record also shows that plaintiffs have given informed consent to waive any potential conflict and proceed with the joint representation. The law firm of DiBella, Geer, McAllister & Best, P.C., has represented under its candor of truthfulness to the tribunal that 1) it has discussed the potential for conflicts with both plaintiffs, 2) it has explained the claims and/or legal options that might be impaired or impeded by continuing to pursue joint representation, 3) plaintiffs have had their respective legal departments consider and evaluate the issues raised by IGP's motion to disqualify and 3) both clients have elected to adhere to the unified approach, waive any conflict and forego the potential claims they might be able to pursue against each other. In other words, plaintiffs have given informed consent to proceed with the unified approach and waive any conflict that might arise from pursuing such an approach.

It follows that the record verifies a waiver of any conflict under Rule 1.7. The identified conflict is not itself disqualifying. Counsel has made an informed decision that it can proceed without sacrificing its respective duties of competency and loyalty to each client. Plaintiffs have

had their legal departments consider the potential complications and the claims and options that could be lost in pursuing the chosen unified strategy and elected to continue with that strategy. The court cannot say that plaintiffs' and counsel's decisions are misplaced or will call into question the integrity of the proceedings before it. Consequently, any potential conflict adequately has been waived under Rule 1.7(b).

In short, the requirements for disqualification have not been met. IGP has waived its right to pursue disqualification. And plaintiffs have made an informed decision to waive any conflict. Accordingly, IGP's motion for disqualification properly has been denied.

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:    Richard W. DiBella, Esquire
       Paul K. Geer, Esquire
       Andrew M. Roman, Esquire
       Mark A. May, Esquire
       John Halley, Esquire
       (*Via CM/ECF Electronic Mail*)